IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| AET INC. LIMITED, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. G-06-487 |
| § | |
| C5 COMMUNICATIONS, LLC, § | |
| § | |
| Defendant. § | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS, STAY, OR TRANSFER**

Plaintiff AET Inc. Limited ("AET") brings this action against Defendant C5 Communications LLC ("C5") requesting the Court to declare that the maritime lines asserted by C5 are null, void, and unenforceable. C5 filed its Amended Motion to Dismiss, Stay, or Transfer, and AET filed a timely Response thereto. For the reasons stated below, C5's Motion is respectfully **DENIED**.[1]

**I. Background**

At the time the events giving rise to this action occurred, Eric Smith was AET's Information Technology Manager. Allegedly, Dean Smith, Eric Smith's father, is one of the founders, ninety percent owner, and Chief Operating Officer of C5. AET claims that Dean Smith "brought C5 to AET, negotiated a Master Services Agreement on behalf of AET and sent confidential reports to management to encourage AET to execute [a] Master Services Agreement with C5." (Pl.'s Compl. at 2.) A Quality of Services Agreement accompanied the Master Service Agreement. In the purported Agreements, C5 agreed to provide satellite communications equipment and services to

---

[1]The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

1

AET's fleet for a fee. The Master Services Agreement contains an arbitration clause, which requires any claims or disputes arising under the Agreement to be "submitted to and settled by final, binding and exclusive arbitration in Harris County, State of Texas." (Def.s' Mot. ¶ 17.)

C5 installed the equipment in some of AET's vessels, but AET claims the equipment failed to function as represented and warranted in the alleged Agreements. AET further claims that it does not have any record of executing the Master Services Agreement, and it informs the Court that its "investigation reveals that Dean Smith, who had electronic signatures of many officers at AET on his computer, may have entered the electronic signature on the contract without the authority of AET." (Pl.'s Compl. at 2 n.1.)

AET alleges that C5 and Dean Smith defrauded AET by using fictitious names and aliases to induce AET into believing that C5 was a large, established company. AET claims that C5 was actually a two-week old company that was operating out of Eric Smith's home.[2] AET cancelled the Master Services Agreement as soon as it discovered the alleged fraudulent conduct.

C5 filed maritime liens in the amount of $249,000 against some of AET's vessels due to alleged past-due invoices.[3] AET claims that it paid C5 for all services rendered and that C5's liens are therefore invalid. C5 filed an application for arbitration because the alleged Master Services Agreement contains an arbitration clause. Thus, C5 seeks a dismissal of the instant case so that an arbitration panel can settle the dispute. In the alternative, C5 requests that the Court either stay the matter pending arbitration, or "transfer [the action] to the Houston Division of the American

---

[2] Some of AET's allegations were originally made in its Response. C5 has not filed a Reply, and, consequently, C5's responses to these allegations are unknown.

[3] Some documents say twelve (12) vessels, and some say fifteen (15).

Arbitration Association." (Def.'s Mot. at 9.)

**II. Legal Standard**

Under the Federal Arbitration Act (FAA), arbitration clauses in maritime contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000). The FAA is representative of a "liberal federal policy favoring arbitration agreements," and it "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983). A federal court has jurisdiction to compel arbitration if the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue." 9 U.S.C. § 4. Furthermore, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." § 3. The federal policy favoring the enforcement of arbitration clauses is so strong that "a federal court may consider only issues relating to the making and performance of the *agreement to arbitrate*," and not issues relating to the making of the contract itself. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S. Ct. 1801, 1806, 18 L. Ed. 2d 1270 (1967) (emphasis added). Thus, even if a party claims a contract was fraudulently induced, the *Prima Paint* separability doctrine requires a federal court to refer the matter to the arbitration panel unless there are specific allegations regarding the arbitration clause itself. *See id.*; *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

While courts must enforce agreed-upon arbitration agreements, the FAA "'does not require parties to arbitrate when they have not agreed to do so,' [because] '[a]rbitration under the FAA is a matter of consent, not coercion.'" *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 217 (5th Cir.

2003) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293–94, 122 S. Ct. 754, 764, 151 L. Ed. 2d 755 (2002)). Thus, in the Fifth Circuit, if "a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute." *Id.* at 219. The Fifth Circuit admits that the distinction is "fine" and "will occasionally be elusive." *Id.* It is clear, however, that if there are "claims that the signature is forged or the agent lacked authority to bind the principle," then the "very existence of [the] agreement" is in question, and the court must decide the matter. *Id.* at 218. Conversely, "any attempt to dissolve [an arbitration] agreement by having the entire agreement declared voidable or void," even though all the parties have signed it, "is for the arbitrator." *Id.*

### III. Analysis

In the instant case, C5 argues that dismissal is appropriate because all matters before this Court are arbitrable and, in fact, are currently the subject of an active arbitration case. AET argues, conversely, that the arbitration proceeding is not valid or authorized and thus should not be considered in the Court's determination. The arbitration clause is contained in the Master Services Agreement, which was allegedly signed by AET's Vice President of Human Resources, Kath Rooney. (AET's Resp. Ex. B.) However, AET asserts that it does not have a record of executing the Master Service Agreement and that Dean Smith may have fraudulently "endorsed" the document with Rooney's electronic signature. As discussed above, if a purported agreement is endorsed via forgery or if the endorsing agent did not have authority to bind the principle, then the contract ceases to exist. Thus, any arbitration clause contained therein is not binding.

C5 argues that, even if the Court does not dismiss the case, it should stay the proceedings until the arbitration is concluded. Under § 3 of the FAA, a court "shall on application of one of the parties

stay the trial . . . until such arbitration has been had" if it is "satisfied that the issue involved in such suit . . . is referable to arbitration under [the arbitration] agreement." 9 U.S.C. § 3. "If the issues in a case are within the reach of the agreement, the district court has no discretion under § 3 to deny the stay." *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986). In the instant case, the Court is not "satisfied" that this case must be arbitrated because AET may not have authorized the arbitration agreement. Thus, the Court has "authority and responsibility to decide [this] matter." *Hill*, 367 F.3d at 429. In *Prima Paint*, the Supreme Court stated that its holding honored "the unmistakably clear congressional intent that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint*, 388 U.S. at 404, 87 S. Ct. at 1806. Likewise, if there is a question as to whether the parties selected arbitration, one party may not delay or hinder the other parties' speedy resolution of the claim by filing an arbitration proceeding.

C5's final request is that the Court, under 28 U.S.C. § 1406(a), transfer this case to the Houston Division of the American Arbitration Association. Section 1406 allows a federal court to transfer a case "to any district or division in which it could have been brought." While C5 admittedly requests the Court transfer the case to another *division*, the American Arbitration Association is not a court, it is an association. Section 1406(c) makes clear that "the term 'district' includes the territorial jurisdiction of each *court*." (emphasis added). C5 has made no showing that another federal court would offer a more convenient venue, so this action will remain in the Galveston Division of the Southern District of Texas.

**IV. Conclusion**

For the reasons stated above, the C5's Motion to Dismiss is **DENIED**. C5's alternative

Motions for a Stay or Transfer are also **DENIED**. Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.

After appropriate discovery, either party may move for summary judgment if warranted. But, at this stage, summary disposition is not yet ripe for consideration.

**IT IS SO ORDERED**.

**DONE** this 5th day of December, 2006, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge